JOHN STRAKER, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Fourth Department, September 26, 1923.

Railroads — action under Federal Employers' Liability Act for damages for personal injuries — plaintiff, member of switching crew, was injured while returning with engine to yard office for orders after delivering interstate commerce cars at departure yard — plaintiff was engaged in interstate commerce — defendant's negligence and plaintiff's freedom from negligence were questions for jury — $22,500 not excessive damages in view of serious nature of injuries.

A brakeman on a railroad is engaged in interstate commerce where it appears, in the action by him brought under the Federal Employers' Liability Act for damages for personal injuries, that at the time of the accident he was working on a switching engine and was returning to the yard office with his engine to receive further orders after having taken several cars containing interstate commerce shipments to the departure yard, though he was not acting under specific orders in making the return trip, for the return movement to get new orders was a part of the original movement in delivering the cars to the departure yard.

The questions of defendant's negligence and plaintiff's freedom from negligence were clearly questions of fact for the jury, as it appears that the plaintiff, though experienced in railroad work, was not familiar with the particular location, and was riding on the rear of the engine tender which was moving backwards; that as the engine entered a thick bank of fog or smoke he endeavored to signal the engineer to stop but his signal was not seen; that an engine approaching from the opposite direction passed through the fog or smoke without giving any signal whatever and collided with the tender on which plaintiff was riding; and where it appears also that the fog or smoke was so thick that the headlights on the approaching engine could not be seen by the plaintiff.

Twenty-two thousand five hundred dollars does not constitute excessive damages in this case, since it appears that at the time of the accident the plaintiff, a married man, was twenty-seven years of age, in good health, and was earning $196 per month; that he suffered internal injuries in the abdomen, one leg was broken and the pelvis was fractured in several places; that as a result of the accident there has been a loss of sexual power; and that for more than a year after the accident he was unable to work at all, and at the time of the trial he was able to do light work only and was earning $155 per month.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 27th day of March, 1923, upon the verdict of a jury for $22,500.

*Moot, Sprague, Brownell & Marcy* [*John W. Ryan* of counsel], for the appellant.

*Hamilton Ward,* for the respondent.

CLARK, J.:

This action is brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) for damages for personal injuries.

At the time of the accident, on the 7th day of January, 1921, plaintiff was employed by defendant as a brakeman on one of its switching engines in its yards at Buffalo. At that time he was riding on the footboard at the rear of the tender of a switch engine, which was backing in a westerly direction on defendant's west-bound track. His duty was to keep a lookout ahead and to signal to the engineer and turn switches when required.

. On the night of the accident plaintiff was a member of the crew of an engine which had taken forty cars loaded with live stock from the stock yards in Buffalo to defendant's so-called easterly departure yards. This stock was moved in interstate commerce, and that fact was admitted by defendant on the trial, so that it is unquestioned that in the movement of the live stock from the stock yards to the east departure yards of defendant, where the loaded cars were left by plaintiff and his crew, both plaintiff and defendant were engaged in interstate commerce.

Defendant contends, however, that at the time of the accident plaintiff was not engaged in interstate commerce.

After delivering the forty cars of live stock to the easterly departure yards the engine and crew, including plaintiff, were returning to the yard office for further orders, and it was on this return trip that the accident occurred. Plaintiff's engine was backing, going in a westerly direction on the west-bound track, and when proceeding at a very slow rate of speed — not exceeding four miles an hour — it collided with an engine that was proceeding easterly on the same track, and as the result of that collision plaintiff sustained the injuries complained of.

At the time of the accident the crew of plaintiff's engine was not acting under any orders. It was returning to the yard office for the purpose of obtaining orders after having delivered an interstate shipment to the defendant's east departure yards. In

returning to the yard office for further orders the crew of plaintiff's engine was following a custom that had existed in defendant's yards at Buffalo for years.

Under these circumstances, when plaintiff was returning to the yard office for further orders after having delivered an interstate shipment at defendant's departure yards, and returning in the usual way, and not under any new orders, we think he was still engaged in interstate commerce, for the return movement to get new orders was part of the original movement of delivering cars concededly engaged in interstate commerce. (*Cott* v. *Erie R. R. Co.,* 189 App. Div. 571; affd., 231 N. Y. 67; *St. Dennis* v. *Director-General of Railroads,* 232 id. 590.)

In the case of *Cott* v. *Erie R. R. Co.* (*supra*) plaintiff's intestate was a conductor of a switching crew in the employ of the Lehigh Valley Railroad Company, one of the defendants, and was killed when his engine was derailed while it was moving along tracks of a terminal railroad in Buffalo, which was a switching road operated by the defendants. He had been engaged in transferring Lehigh Valley cars to the New York Central railroad, which cars were engaged in interstate commerce. It was held that the intestate was engaged in interstate commerce when his engine was derailed.

In the case of *St. Dennis* v. *Director-General of Railroads* (*supra*) plaintiff was conductor on one of defendant's work trains. This train had been engaged in interstate commerce at the Tifft farm, east of Buffalo. Returning from that work to defendant's yards at East Buffalo, he was killed in a collision between his work train, which was backing toward the yards, and a yard engine moving in the opposite direction, and on the same track against the current of traffic. The Court of Appeals held that on the return trip to the home yard the conductor was still engaged in interstate commerce.

The case of *Erie R. R. Co.* v. *Welsh* (242 U. S. 303), cited and relied upon by defendant to support its contention that at the time of this accident plaintiff was not engaged in interstate commerce, is not controlling here, for the reason that in that case the return trip had been completed, and plaintiff had left his engine and was proceeding to the office when the accident occurred. In that case the crew had been engaged in both interstate and intrastate work. It was not shown which kind of service had been last performed. The crew had completed the return trip after having rendered this interstate and intrastate service.

In the case at bar the movement of taking the forty loaded cars to the east departure yards was exclusively an interstate movement and the return trip for further orders had not been

completed when the accident occurred. The moving of the cars and the returning for other orders were parts of the same transaction.

As was said by the Court of Appeals in the case of *Cott* v. *Erie R. R. Co.* (*supra*): " Its character [the movement engaged in] is determined by continuity of movement combined with unity of plan. Thus viewed, the switching at the terminal was not a finality, but an incident. The cause that Cott was serving when he died was the cause of foreign commerce."

The questions of defendant's negligence and plaintiff's freedom from negligence were clearly questions of fact for the jury.

This accident occurred on a dark night and it was raining. In delivering the forty cars of live stock to the easterly departure yards of defendant, plaintiff had been located on the second car ahead of the engine which was pushing the cars. His duties were to receive signals from the conductor and transmit them to the engineer. Although he had had considerable experience in railroading, he was unfamiliar with the surroundings at the place of the accident. On the return trip after the forty cars of live stock had been delivered to the departure yards a thick bank of smoke and steam was hanging over the track near a dump pit. Just as plaintiff's engine entered this fog or steam bank plaintiff attempted to signal to the engineer to stop. Instantly there was a crash and plaintiff was injured. There had been a collision with another engine going in the opposite direction on the same track. There were no signals by bell or whistle, and plaintiff could not see lights on the other engine. The fog or smoke was so dense that the lights could not be seen. The east-bound engine had proceeded 200 feet through this dense fog, but gave no signals and did not stop.

The jury might well have found that this was negligence on the part of the crew of the east-bound train. The lights on its engine could not be seen by plaintiff owing to the fog bank and as soon as he appreciated the conditions he attempted to signal his engineer to stop, and the crash followed instantly. He was unfamiliar with the surroundings and did not know that he was proceeding on the same track as the one used when going east with the loaded cars.

In view of the fact that plaintiff attempted to signal his engineer to stop as soon as he reached the fog bank and appreciated the danger, it is difficult to see what more he could have done that would have been required of a reasonably prudent man under the circumstances.

If the crew of the east-bound engine had exercised equal caution, there would have been no accident. The members of that crew

approached this fog bank from the west, but instead of stopping their engine, they proceeded through the smoke or fog without giving signals a distance of 200 feet until they were just emerging from it at the easterly end, when the collision occurred.

Under the Federal Employers' Liability Act the contributory negligence of the employee is not a complete defense but goes only to the diminution of damages.    (See 35 U. S. Stat. at Large, 66, § 3.) It may well be presumed that this question with others was considered and passed on by the jury.

Defendant urges that even though the parties were engaged in interstate commerce at the time of the accident, and that plaintiff was free from negligence, and that the defendant was negligent, the damages awarded were grossly excessive.

At the time of the accident plaintiff was twenty-seven years of age and weighed 165 pounds, and was in good health.    He had recently been married and was earning $196 per month.    His injuries were very serious.    The lining of the bowels and abdomen burst; the abdomen was full of blood and urine and feces; the bladder was punctured; he sustained a broken leg, and there were several fractures of the pelvis.    He remained in the hospital on the first visit nearly a month, and after being home during the month of February he was obliged to return to the hospital for an additional operation to remove an obstruction of the bowels. This condition resulted from the accident.    During all this time he suffered severe pain.    He urinated with difficulty and was constipated.

For more than a year plaintiff was unable to work at all, and since that time he has been able to do no heavy work, although he is able to do light work, and at the time of the trial was earning $155 a month.    As the result of this accident there has been a loss of sexual power.    Under these circumstances the verdict was not excessive.

We find no errors in the record that prejudiced the rights of defendant.    The exceptions raised because of the admission of evidence of lack of instructions to plaintiff by the conductor do not require a reversal, for even if such evidence was erroneously received it was stricken from the record and the jury particularly instructed to disregard it.    No harm was done and no substantial rights of defendant were invaded.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.